JG/JNM/USAO2005R01185

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA        :       Hon.
                                :
            v.                  :       Criminal No. 09- 369 (WJM)
                                :
PAUL BERGRIN,                   :
YOLANDA JAUREGUI,               :
  a/k/a "Yolanda Bracero,"      :       18 U.S.C. §§ 1962,
THOMAS MORAN,                   :       1512, 1952, 1349
VICENTE ESTEVES,                :       1343, 371 and 2
  a/k/a "Vinny," and            :
SUNDIATA KOONTZ                 :
- - - - - - - - - - - - - - - -X
```

**I N D I C T M E N T**

**COUNT ONE**
(Racketeering)
(Defendant Bergrin)

The Grand Jury in and for the District of New Jersey, sitting in Newark, charges:

**The Enterprise**

1.   At various times relevant to this Indictment, in the District of New Jersey and elsewhere, defendant PAUL BERGRIN, and others known and unknown, were members and associates of The Bergrin Law Enterprise, a criminal organization that operated principally in Essex County, New Jersey.

2.   The Bergrin Law Enterprise operated primarily as a law firm that provided both legal and illegal services to various criminals, criminal organizations and members of criminal organizations who hired the enterprise ("Client Criminals"). Defendant PAUL BERGRIN was the leader and principal lawyer in The

Bergrin Law Enterprise. Members and associates of The Bergrin Law Enterprise assisted defendant PAUL BERGRIN in rendering legal and illegal services to the Client Criminals. In addition to providing the Client Criminals with services normally rendered by practicing lawyers, The Bergrin Law Enterprise also provided a number of illegal services, such as assisting the Client Criminals in fraudulently obtaining loans in connection with real estate transactions, witness tampering, conspiracy to commit murder, murder, traveling in aid of racketeering enterprises, wire fraud, money laundering and drug trafficking.

3. The Bergrin Law Enterprise, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the Enterprise"), that is, a group of individuals and legal entities associated in fact. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### Purposes of the Enterprise

4. The purposes of the Enterprise included the following:

a. Providing the Enterprise and its leaders, members and associates with an expanding base of clients for

2

legal and illegal services;

      b.    Generating, preserving and protecting the Enterprise's profits and client base through acts of, among other things, witness tampering, conspiracy to commit murder, murder, traveling in aid of racketeering enterprises, wire fraud, money laundering and drug trafficking;

      c.    Protecting and preserving defendant PAUL BERGRIN's status as a licensed lawyer;

      d.    Promoting and enhancing the Enterprise and its leaders', members' and associates' activities;

      e.    Enriching the leaders, members and associates of the Enterprise; and

      f.    Concealing and otherwise protecting the criminal activities of the Enterprise and its participants from detection and prosecution.

### Role of the Defendant PAUL BERGRIN

      5.    Defendant PAUL BERGRIN participated in the operation and management of the Enterprise.  Defendant PAUL BERGRIN was the leader of the Enterprise who, among other things, directed other members and associates of the Enterprise in carrying out unlawful and other activities in furtherance of the conduct of the Enterprise's affairs.

## Roles of Other Members and Associates of the Enterprise

6.     The members and associates of the Enterprise included both corporations and persons.  Under the direction of defendant PAUL BERGRIN, Enterprise members and associates, including, Law Office of Paul W. Bergrin P.C., P.B.& V., P.A., Premium Realty Investment Corp., Yolanda Jauregui, a/k/a "Yolanda Bracero," Thomas Moran, Vicente Esteves, a/k/a "Vinny," and Sundiata Koontz, participated in unlawful and other activities in furtherance of the conduct of the Enterprise's affairs, as further described below:

a.     Law Office of Paul W. Bergrin was a corporation owned by defendant PAUL BERGRIN that engaged in the business of providing attorney services.  Law Office of Paul W. Bergrin conducted the affairs of the Enterprise by, among other things, assisting the Enterprise in witness tampering, conspiracy to commit murder, traveling in aid of racketeering enterprises, wire fraud and drug trafficking.

b.     P.B.& V., P.A. was a corporation that engaged in the business of providing attorney services.  Defendant PAUL BERGRIN was fifty percent (50%) owner of P.B.& V., P.A.  P.B. & V., P.A. conducted the affairs of the Enterprise by, among other things, assisting the Enterprise in witness tampering, conspiracy to commit murder, murder and wire fraud.

c.     Premium Realty Investment Corp. was a

4

corporation owned by defendant PAUL BERGRIN and Enterprise associate Yolanda Jauregui, a/k/a "Yolanda Bracero," which purported to engage in the real estate investment business. Premium Realty Investment Corp. conducted the affairs of the Enterprise by, among other things, assisting the Enterprise in wire fraud.

        d.    Yolanda Jauregui, a/k/a "Yolanda Bracero," conducted the affairs of the enterprise by, among other things, engaging in wire fraud.

        e.    Thomas Moran conducted the affairs of the enterprise by, among other things, engaging in traveling in aid of racketeering enterprises.

        f.    Vicente Esteves, a/k/a "Vinny," conducted the affairs of the enterprise by, among other things, engaging in traveling in aid of racketeering enterprises.

        g.    Sundiata Koontz conducted the affairs of the enterprise by, among other things, engaging in wire fraud.

### Means and Methods of the Enterprise

        7.    Among the means and methods by which defendant PAUL BERGRIN, and other members and associates of the Enterprise conducted and participated in the conduct of the affairs of the Enterprise were the following:

        a.    Defendant PAUL BERGRIN and other members and associates of the Enterprise provided illegal services to Client

Criminals.

b.   Defendant PAUL BERGRIN and other members and associates of the Enterprise facilitated the Client Criminals' unlawful activities, including witness tampering, conspiracy to commit murder, murder, traveling in aid of racketeering enterprises, wire fraud, money laundering and drug trafficking.

c.   Defendant PAUL BERGRIN and other members and associates of the Enterprise committed and assisted in the commission of various schemes designed to fraudulently obtain loan proceeds for Client Criminals and leaders, members and associates of the Enterprise.

d.   Defendant PAUL BERGRIN and other members and associates of the Enterprise counseled and otherwise assisted Client Criminals in conducting illegal activities in a manner designed to avoid law enforcement scrutiny or otherwise thwart potential law enforcement investigations and criminal prosecutions.

e.   Defendant PAUL BERGRIN and other members and associates of the Enterprise devised, executed and assisted in devising and executing schemes to thwart criminal prosecution of Client Criminals and members and associates of the Enterprise by, among other things: bribing, intimidating and otherwise causing witnesses to offer perjured testimony at court proceedings; bribing, intimidating and otherwise causing witnesses to absent

6

themselves from offering testimony at court proceedings; and murdering and conspiring to murder witnesses to prevent their testimony at court proceedings.

### The Racketeering Violation

8.    From in or about November 2003 through in or about December 2008, in the counties of Essex, Hudson and Monmouth, in the District of New Jersey and elsewhere, defendant

PAUL BERGRIN

together with others known and unknown, being persons employed by and associated with The Bergrin Law Enterprise described above, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully and knowingly conducted and participated, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, that is, through the commission of the following acts: Racketeering Acts One through Seven, as set forth in paragraphs nine through sixteen below.

### The Pattern of Racketeering Activity

9.    The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisted of the following acts:

10.   Racketeering Act One:
      Murder of a Witness (K.D.M.)

Defendant PAUL BERGRIN committed the following acts, any one of which alone constitutes the commission of Racketeering

7

Act One:

        a.    Conspiracy to Tamper with a Witness (Murder of K.D.M.)

From on or about November 25, 2003 through on or about March 2, 2004, in the counties of Hudson and Essex, in the District of New Jersey and elsewhere, defendant PAUL BERGRIN did knowingly and intentionally conspire and agree with others to kill another person, namely, K.D.M., with malice aforethought and with intent to prevent the attendance and testimony of K.D.M. in an official proceeding, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that in furtherance of the conspiracy a co-conspirator did unlawfully kill K.D.M. willfully, deliberately, maliciously, and with premeditation, contrary to Title 18, United States Code, Sections 1512(a)(1)(A) and (a)(3)(A).  In violation of Title 18, United States Code, Section 1512(k).

        b.    Tampering with a Witness (Murder of K.D.M.)

On or about March 2, 2004, in the county of Essex, in the District of New Jersey and elsewhere, defendant PAUL BERGRIN did knowingly and intentionally aid, abet, counsel and induce others to kill another person, namely, K.D.M., with malice aforethought and with intent to prevent the attendance and testimony of K.D.M. in an official proceeding, which killing is a murder as defined in Title 18, United States Code, Section

8

1111(a), in that such killing was done unlawfully, willfully, deliberately, maliciously, and with premeditation.  In violation of Title 18, United States Code, Sections 1512(a)(1)(A) and (a)(3)(A) and Section 2.

### c.   Conspiracy to Murder K.D.M.

From on or about November 25, 2003 through on or about March 2, 2004, in the counties of Hudson and Essex, in the District of New Jersey and elsewhere, defendant PAUL BERGRIN did knowingly and intentionally conspire and agree with others known and unknown, to cause the death and serious bodily injury resulting in death of another person, namely, K.D.M., contrary to N.J.S.A Sections 2C:11-3 (1) &(2), in violation of N.J.S.A Section 2C:5-2.

### d.   Murder of K.D.M.

On or about March 2, 2004, in the county of Essex, in the District of New Jersey and elsewhere, defendant PAUL BERGRIN did purposely and knowingly cause the death and serious bodily injury resulting in death of another person, namely, K.D.M., in violation of N.J.S.A. Sections 2C:2-6 and 2C:11-3(1) & (2).

11.   Racketeering Act Two:
Conspiracy To Murder Witnesses against Vicente Esteves

From in or about June 2008 through in or about December 2008, in the Counties of Monmouth and Essex, in the District of

New Jersey and elsewhere, defendant PAUL BERGRIN did knowingly and intentionally conspire and agree with others known and unknown, to cause the death and serious bodily injury resulting in death of another person, namely, D.C. contrary to N.J.S.A Sections 2C:11-3(1)&(2), in violation of N.J.S.A Section 2C:5-2.

> 12.  Racketeering Act Three:
>      Interstate Travel or Transportation in Aid of
>      Racketeering Enterprises

Defendant PAUL BERGRIN committed the following acts, any one of which alone constitutes the commission of Racketeering Act Three:

> a.   The August 5, 2008 Travel

On or about August 5, 2008, in the District of New Jersey, and elsewhere, defendant PAUL BERGRIN and others known and unknown did knowingly and intentionally travel in and use facilities in interstate commerce and cause the travel in and use of facilities in interstate commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of such unlawful activity.  In violation of Title 18, United States Code,

Section 1952(a)(3) and Section 2.

        b.    The September 5, 2008 Telephone Conversation

On or about September 5, 2008, in the District of New Jersey, and elsewhere, defendant PAUL BERGRIN and others known and unknown did knowingly and intentionally use and cause the use of facilities in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, that is, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to commit a crime of violence to further such unlawful activity.  In violation of Title 18, United States Code, Section 1952(a)(2) and Section 2.

        c.    The December 8, 2008 Travel

On or about December 8, 2008, in the District of New Jersey, and elsewhere, defendant PAUL BERGRIN and others known and unknown did knowingly and intentionally travel in and use facilities in interstate commerce, and cause the travel in and the use of facilities in interstate commerce, with the intent to commit a crime of violence to further an unlawful activity, namely, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to commit a crime of violence to further such unlawful activity.  In violation of Title 18, United States Code, Section 1952(a)(2) and

11

Section 2.

    13.   Racketeering Act Four:
           Wire Fraud - 46 Eaton Place

From on or about May 19, 2005 through on or about

October 26, 2005, in Essex County, in the District of New Jersey,

and elsewhere, defendant PAUL BERGRIN and others knowingly and

intentionally devised and intended to devise a scheme and

artifice to defraud, and for obtaining money and property by

means of materially false and fraudulent pretenses,

representations, and promises, and transmitted and caused to be

transmitted by means of wire, radio, or television communication

in interstate or foreign commerce, a writing, sign, signal,

picture, and sound for the purpose of executing such scheme or

artifice.   In violation of Title 18, United States Code, Section

1343 and Section 2.

    14.   Racketeering Act Five:
           Wire Fraud - 13 Edgerton Terrace

From on or about July 11, 2005 through on or about

August 2, 2005, in Essex County, in the District of New Jersey,

and elsewhere, defendant PAUL BERGRIN and others knowingly and

intentionally devised and intended to devise a scheme and

artifice to defraud, and for obtaining money and property by

means of materially false and fraudulent pretenses,

representations, and promises, and transmitted and caused to be

transmitted by means of wire, radio, or television communication

12

in interstate or foreign commerce, a writing, sign, signal, picture, and sound for the purpose of executing such scheme or artifice.  In violation of Title 18, United States Code, Section 1343 and Section 2.

15.    Racketeering Act Six:
       Wire Fraud – 484 South 20th Street

From on or about February 10, 2006 through on or about March 22, 2006, in Essex County, in the District of New Jersey, and elsewhere, defendant PAUL BERGRIN and others knowingly and intentionally devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, a writing, sign, signal, picture, and sound for the purpose of executing such scheme or artifice.  In violation of Title 18, United States Code, Section 1343 and Section 2.

16.    Racketeering Act Seven:
       Wire Fraud – 266 Wainwright Street

From on or about February 10, 2006 through on or about April 6, 2006, in Essex County, in the District of New Jersey, and elsewhere, defendant PAUL BERGRIN and others knowingly and intentionally devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by

13

means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, a writing, sign, signal, picture, and sound for the purpose of executing such scheme or artifice.  In violation of Title 18, United States Code, Section 1343 and Section 2.

All in violation of Title 18, United States Code, Section 1962(c) and Section 2.

**COUNT TWO**
(Racketeering Conspiracy)
(Defendant Bergrin)

1.    Paragraphs one through seven and nine through sixteen of Count One of this Indictment are hereby realleged and incorporated as if fully set forth herein.

2.    From in or about November 2003 through in or about December 2008 in the counties of Essex, Hudson and Monmouth, in the District of New Jersey and elsewhere, defendant

PAUL BERGRIN

together with other persons known and unknown, being persons employed by and associated with The Bergrin Law Enterprise described above, an enterprise, which engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and (5). The pattern of racketeering activity through which defendant PAUL BERGRIN agreed to conduct the affairs of the enterprise consisted of the acts set forth in paragraphs nine through sixteen of Count One of this Indictment, which are realleged and incorporated as if fully set forth herein.

3.    It was a part of the conspiracy that defendant

15

PAUL BERGRIN agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

**COUNT THREE**
(Conspiracy to Murder a Witness)
(Defendant Bergrin)

1.    From in or about January 2003 through in or about
November 2003, Federal law enforcement agents conducted an
investigation into the drug trafficking activities of a
co-conspirator, William Baskerville, who is not named as a
defendant herein.

2.    An individual hereinafter referred to as "K.D.M."
provided information and assistance to Federal law enforcement
agents in connection with the investigation into the drug
trafficking activities of William Baskerville.  As part of the
investigation, K.D.M., under the supervision and surveillance of
Federal law enforcement agents, purchased cocaine base from
William Baskerville on six separate occasions.

3.    On or about November 18, 2003, a United States
Magistrate Judge for the District of New Jersey signed a criminal
complaint and issued an arrest warrant charging William
Baskerville with distributing five grams or more of a substance
containing cocaine base in violation of Federal law ("the Federal
Drug Case").

4.    The affidavit of a Federal law enforcement agent
(the "Agent's Affidavit") submitted in support of the criminal
complaint and arrest warrant set forth, in part, that K.D.M.,
identified in the Agent's Affidavit only as the "confidential

17

witness," assisted law enforcement by making purchases of cocaine base from William Baskerville.

5.   On or about November 25, 2003, William Baskerville was arrested on the above-described arrest warrant and appeared in United States Court for the District of New Jersey.  Defendant PAUL BERGRIN appeared as defense counsel for William Baskerville in connection with the Federal Drug Case.  At that Court proceeding, William Baskerville and defendant PAUL BERGRIN were informed of the crime with which William Baskerville was charged and received a copy of the criminal complaint and the Agent's Affidavit related to the Federal Drug Case.

6.   On that same day, after learning of the allegations in the criminal complaint and the Agent's Affidavit, William Baskerville determined that K.D.M. was the individual identified in the Agent's Affidavit as the "confidential witness."

### The Conspiracy

7.   From on or about November 25, 2003 through on or about March 2, 2004, in the counties of Hudson and Essex, in the District of New Jersey and elsewhere, defendant

PAUL BERGRIN

did knowingly and intentionally conspire and agree with others to kill another person, namely, K.D.M., with malice aforethought and with intent to prevent the attendance and testimony of K.D.M. in

18

an official proceeding, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that in furtherance of the conspiracy, a co-conspirator did unlawfully kill K.D.M. willfully, deliberately, maliciously, and with premeditation, contrary to Title 18, United States Code, Sections 1512(a)(1)(A) and (a)(3)(A).

### The Object of the Conspiracy

8.   It was the object of the conspiracy to kill K.D.M. to prevent his attendance and testimony at official proceedings pertaining to the Federal Drug Case against William Baskerville.

### Manner and Means of the Conspiracy

9.   It was part of the conspiracy that after William Baskerville determined the identity of the "confidential witness," William Baskerville informed defendant PAUL BERGRIN that the identity of the "confidential witness" was K.D.M.

10.   It was further part of the conspiracy that defendant PAUL BERGRIN thereafter told other co-conspirators, including a co-conspirator herein referred to as H.C., that the identity of the "confidential witness" was K.D.M.

11.   It was further part of the conspiracy that defendant PAUL BERGRIN met with other co-conspirators, including H.C., and those herein referred to as R.B. and A.Y., reiterated to them that the identity of the "confidential witness" was K.D.M., stressed to the co-conspirators that the only way William

19

Baskerville could win the Federal Drug Case was if K.D.M. were killed, and told the co-conspirators that he would win the Federal Drug Case for William Baskerville if the co-conspirators killed K.D.M.

12.   It was a further part of the conspiracy that on or about March 2, 2004, A.Y., a co-conspirator, shot K.D.M. and caused the death of K.D.M.

In violation of Title 18, United States Code, Section 1512(k).

**COUNT FOUR**
(Murder of a Witness)
(Defendant Bergrin)

1.    Paragraphs one through six and nine through twelve of Count Three of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about March 2, 2004, in the county of Essex, in the District of New Jersey and elsewhere, defendant

PAUL BERGRIN

did knowingly and intentionally aid, abet, counsel and induce others to kill another person, namely, K.D.M., with malice aforethought and with intent to prevent the attendance and testimony of K.D.M. in an official proceeding, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that such killing was done unlawfully, willfully, deliberately, maliciously, and with premeditation.

In violation of Title 18, United States Code, Sections 1512(a)(1)(A) and (a)(3)(A) and Section 2.

21

### COUNT FIVE
(Conspiracy to Travel in Aid of Racketeering Enterprise)
(Defendants Bergrin, Moran and Esteves)

1.   At all times relevant to Count Five of this Indictment:

a.   Defendant VICENTE ESTEVES was charged in Superior Court in Monmouth County, New Jersey with cocaine trafficking in violation of New Jersey State criminal law (hereinafter, "the Monmouth County Case").

b.   Defendant PAUL BERGRIN was a lawyer who represented defendant VICENTE ESTEVES in the Monmouth County Case.

c.   Defendant THOMAS MORAN was a lawyer who assisted PAUL BERGRIN in the Monmouth County Case.

d.   Defendant VICENTE ESTEVES was detained in the Monmouth County Correctional Institution pending trial on the Monmouth County Case, and thus, was unable to carry on his cocaine trafficking business.

### The Conspiracy

2.   From in or about June 2008 through on or about December 9, 2008, in the District of New Jersey, and elsewhere, defendants

PAUL BERGRIN,
THOMAS MORAN, and
VICENTE ESTEVES, a/k/a "Vinny"

did knowingly and intentionally conspire and agree with each

22

other and with others to travel in and use facilities in
interstate commerce, and to cause the travel in and the use of
facilities in interstate commerce with the intent: (a) to
promote, manage, establish, carry on, and facilitate the
promotion, management, establishment and carrying on of an
unlawful activity, that is, the distribution of a controlled
substance, contrary to Title 21, United States Code, Sections 841
and 846, and to thereafter, perform and attempt to perform acts
to promote, manage, establish, carry on and facilitate the
promotion, management, establishment, and carrying on of such
unlawful activity, contrary to Title 18, United States Code,
Section 1952(a)(3); and (b) to commit a crime of violence to
further an unlawful activity, that is, the distribution of a
controlled substance, and to thereafter, perform an act to commit
a crime of violence to further such unlawful activity, contrary
to Title 18, United States Code, Section 1952(a)(2).

## Object of the Conspiracy

3.    It was the object of the conspiracy for the
defendants to prevent witnesses in the Monmouth County Case from
testifying against VICENTE ESTEVES, a/k/a "Vinny," so that
VICENTE ESTEVES, a/k/a "Vinny," could thwart the prosecution of
the Monmouth County Case, secure his release from the Monmouth
County Correctional Institution and resume his drug trafficking
business.

23

## Manner and Means of the Conspiracy

4.     Beginning in or about June 2008, defendants PAUL BERGRIN and VICENTE ESTEVES, a/k/a "Vinny," identified persons whom they believed were cooperating with law enforcement and would be witnesses for the prosecution against VICENTE ESTEVES, a/k/a "Vinny," in the Monmouth County Case (hereinafter, "the Monmouth County Witnesses").

5.     Beginning in or about June 2008, defendants PAUL BERGRIN and VICENTE ESTEVES, a/k/a "Vinny," devised a plan to ensure that the Monmouth County Witnesses did not cooperate with law enforcement and testify against VICENTE ESTEVES, a/k/a "Vinny," in the Monmouth County Case.

6.     Beginning in June 2008, defendants VICENTE ESTEVES, a/k/a "Vinny," PAUL BERGRIN and THOMAS MORAN solicited and obtained the services of another individual (hereinafter, the "Hitman") to kill the Monmouth County Witnesses so that VICENTE ESTEVES, a/k/a "Vinny," could thwart the prosecution of the Monmouth County Case, secure his release from the Monmouth County Correctional Institution and resume his cocaine trafficking business.

7.     From in or about June 2008 through in or about December 2008, the defendants traveled in and used facilities in interstate commerce, and caused others to travel in and use facilities in interstate commerce, for the purpose of killing or

24

otherwise preventing the Monmouth County Witnesses from testifying against VICENTE ESTEVES, a/k/a "Vinny."

### Overt Acts

8.   In furtherance of the conspiracy and to effect the illegal object thereof, the defendants, PAUL BERGRIN, THOMAS MORAN and VICENTE ESTEVES, a/k/a "Vinny," and others known and unknown, committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a.   On or about July 10, 2008, defendant PAUL BERGRIN met with the Hitman and told the Hitman that defendant VICENTE ESTEVES, a/k/a "Vinny," wanted the Hitman to make sure that the Monmouth County Witnesses did not cooperate with law enforcement and testify against defendant VICENTE ESTEVES, a/k/a "Vinny."

b.   On or about August 5, 2008, defendant PAUL BERGRIN traveled from Newark, New Jersey to Chicago, Illinois to meet with the Hitman.  During that meeting, defendant PAUL BERGRIN told the Hitman that an individual known as "Junior the Panamanian," (herein also referred to as D.C.) among other persons, was the "f--king rat," that is a potential witness against VICENTE ESTEVES, a/k/a "Vinny," and that defendant PAUL BERGRIN would provide instructions designed to assist the Hitman in locating Junior the Panamanian.

c.   On or about August 19, 2008, defendant PAUL

25

BERGRIN met with the Hitman and told the Hitman that he would
provide the Hitman with a cellphone to be used exclusively for
the purpose of the Hitman speaking with defendant VICENTE
ESTEVES, a/k/a "Vinny," regarding the plot to ensure that the
Monmouth County Witnesses did not cooperate with law enforcement
and testify against VICENTE ESTEVES, a/k/a "Vinny."

   d. On or about August 21, 2008, defendant THOMAS
MORAN gave the Hitman a cellphone to be used exclusively to speak
to defendant VICENTE ESTEVES, a/k/a "Vinny," regarding the plot
to ensure the Monmouth County Witnesses did not cooperate with
law enforcement and testify against VICENTE ESTEVES, a/k/a
"Vinny."

   e. On or about August 21, 2008, defendant
VICENTE ESTEVES, a/k/a "Vinny," had a telephone conversation with
the Hitman in which defendant VICENTE ESTEVES, a/k/a "Vinny,"
confirmed that he wanted the Hitman to ensure that Junior the
Panamanian and two other persons whom defendant VICENTE ESTEVES,
a/k/a "Vinny," believed were witnesses against him in the
Monmouth County Case did not cooperate with law enforcement and
testify against defendant VICENTE ESTEVES, a/k/a "Vinny."

   f. On or about September 4, 2008, defendant PAUL
BERGRIN met with the Hitman, told the Hitman that Junior the
Panamanian had been seen in New Jersey and agreed to set up a
meeting between the Hitman and another person, M.L., who

26

defendant PAUL BERGRIN said could provide the Hitman with more details regarding the location of Junior the Panamanian.

g.   On or about September 5, 2008, defendant PAUL BERGRIN, placed a telephone call to the Hitman and discussed with the Hitman that the Hitman had met with M.L., but that M.L. did not provide the Hitman with information regarding the then current location of Junior the Panamanian.

h.   On or about October 2, 2008, defendant PAUL BERGRIN met with the Hitman and told the Hitman that he would introduce the Hitman to a second person who would help the Hitman locate Junior the Panamanian so that the Hitman could kill Junior the Panamanian.

i.   On or about November 17, 2008, defendant PAUL BERGRIN met with the Hitman and provided the Hitman with the names of two other persons whom defendant VICENTE ESTEVES, a/k/a "Vinny," wanted killed to prevent their testimony against him in the Monmouth County Case.

j.   On or about December 8, 2008, defendant THOMAS MORAN offered to assist the Hitman in obtaining a gun so that the Hitman could kill Junior the Panamanian.

k.   On or about December 8, 2008, defendant THOMAS MORAN placed a telephone call to another individual in order to obtain a gun for the Hitman.

l.   On or about December 8, 2008, subsequent to

27

the telephone call described above in paragraph 8(k), defendant THOMAS MORAN drove the Hitman to a meeting with defendant PAUL BERGRIN.

m.   On or about December 8, 2008, defendant PAUL BERGRIN met with the Hitman and instructed the Hitman to make the murder of Junior the Panamanian appear as if it were part of a home invasion robbery rather than the execution of a witness.

All in violation of Title 18, United States Code, Section 371.

28

**COUNT SIX**
(Travel in Aid of Racketeering Enterprise)
(Defendants Bergrin and Moran)

1.    Paragraphs one and four through eight of Count Five of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about August 5, 2008 in the District of New Jersey, and elsewhere, defendants

PAUL BERGRIN and
THOMAS MORAN

did knowingly and intentionally travel in and use facilities in interstate commerce and cause the travel in and the use of facilities in interstate commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to promote manage establish, carry on and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, as follows:

a.    On or about August 5, 2008, defendant PAUL BERGRIN traveled from Newark, New Jersey to Chicago, Illinois, to meet with the Hitman.  During that meeting, defendant PAUL BERGRIN told the Hitman that an individual known as "Junior the Panamanian," among other persons, was the "f--king rat," that is a potential witness against Vicente Esteves, a/k/a "Vinny," and

29

that defendant PAUL BERGRIN would provide instructions designed to assist the Hitman in locating Junior the Panamanian.

      b.   On or about August 19, 2008, defendant PAUL BERGRIN met with the Hitman and told the Hitman that he would provide the Hitman with a cellphone to be used exclusively for the purpose of the Hitman speaking with Vicente Esteves, a/k/a "Vinny," regarding the plot to ensure the Monmouth County Witnesses did not cooperate with law enforcement and testify against Vicente Esteves, a/k/a "Vinny."

      c.   On or about August 21, 2008, defendant THOMAS MORAN gave the Hitman a cellphone to be used exclusively to speak to Vicente Esteves, a/k/a "Vinny," regarding the plot to ensure the Monmouth County Witnesses did not cooperate with law enforcement and testify against Vicente Esteves, a/k/a "Vinny."

      d.   On or about August 21, 2008, Vicente Esteves, a/k/a "Vinny," had a telephone conversation with the Hitman in which Vicente Esteves, a/k/a "Vinny," confirmed that he wanted the Hitman to ensure that Junior the Panamanian and two other persons whom Vicente Esteves, a/k/a "Vinny," believed were witnesses against him in the Monmouth County Case did not cooperate with law enforcement and testify against Vicente Esteves, a/k/a "Vinny."

      In violation of Title 18, United States Code, Section 1952(a)(3) and Section 2.

## COUNT SEVEN
(Travel in Aid of Racketeering Enterprise)
(Defendant Bergrin)

1.    Paragraphs one and four through eight of Count Five of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about September 5, 2008, in the District of New Jersey, and elsewhere, defendant

PAUL BERGRIN

did knowingly and intentionally use and cause the use of facilities in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, namely, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to commit a crime of violence to further such unlawful activity, as follows:

a.    On or about September 5, 2008, defendant PAUL BERGRIN, placed a telephone call to the Hitman and discussed with the Hitman that the Hitman had met with M.L., but that M.L. did not provide the Hitman with information regarding the then current location of Junior the Panamanian.

b.    On or about October 2, 2008, defendant PAUL BERGRIN met with the Hitman and told the Hitman that he would introduce the Hitman to a second person who would help the Hitman locate Junior the Panamanian so that the Hitman could kill Junior the Panamanian.

31

   c. On or about November 17, 2008, defendant PAUL BERGRIN met with the Hitman and provided the Hitman with the names of two other persons whom Vicente Esteves, a/k/a "Vinny," wanted killed to prevent their testimony against him in the Monmouth County Case.

   In violation of Title 18, United States Code, Section 1952(a)(2) and Section 2.

**COUNT EIGHT**
(Travel in Aid of Racketeering Enterprise)
(Defendants Bergrin and Moran)

1.    Paragraphs one and four through eight of Count Five of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.    On or about December 8, 2008, in the District of New Jersey, and elsewhere, defendants

PAUL BERGRIN and
THOMAS MORAN

did knowingly and intentionally travel in and use facilities in interstate commerce, and cause the travel in and the use of facilities in interstate commerce, with the intent to commit a crime of violence to further an unlawful activity, namely, the distribution of a controlled substance, contrary to Title 21, United States Code, Sections 841 and 846, and thereafter, did perform and attempt to perform an act to commit a crime of violence to further such unlawful activity, as follows:

a.    On or about December 8, 2008, the Hitman traveled from Chicago, Illinois, to Newark, New Jersey to meet with defendants PAUL BERGRIN and THOMAS MORAN.

b.    On or about December 8, 2008, defendant THOMAS MORAN met with the Hitman and offered to assist the Hitman in obtaining a gun so that the Hitman could kill Junior the Panamanian.

c.    On or about December 8, 2008, defendant THOMAS MORAN placed a telephone call to another individual in

33

order to obtain a gun for the Hitman.

        d.   On or about December 8, 2008, subsequent to the telephone call described above in paragraph 2(c), defendant THOMAS MORAN drove the Hitman to a meeting with defendant PAUL BERGRIN.

        e.   On or about December 8, 2008, defendant PAUL BERGRIN met with the Hitman and instructed the Hitman to make the murder of Junior the Panamanian appear as if it were part of a home invasion robbery rather than the execution of a witness.

        In violation of Title 18, United States Code, Section 1952(a)(2) and Section 2.

**COUNT NINE**
(Wire Fraud Conspiracy)
(Defendants Bergrin, Jauregui, Koontz)

1.   At all times relevant to Count Nine of this Indictment:

a.   Atlantic Home Loans, J.P. Morgan Chase Bank, America's Wholesale Lender and Bear Stearns Residential Mortgage Corporation, were lending institutions that administered mortgage loan programs which allowed borrowers who could meet income, credit eligibility, and down payment underwriting requirements, among other things, to obtain financing secured by real estate.

b.   Defendant PAUL BERGRIN was an attorney who owned properties located in Essex County and elsewhere. Defendant PAUL BERGRIN acted as a seller or as a closing attorney in connection with fraudulent real estate transactions.

c.   Defendant YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," owned properties in Essex County and elsewhere with defendant PAUL BERGRIN, and also participated in fraudulent real estate transactions.

d.   A co-conspirator herein referred to as "D.D.," facilitated fraudulent real estate transactions on behalf of and in concert with defendants PAUL BERGRIN, YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," SUNDIATA KOONTZ, and others.

e.   Defendant SUNDIATA KOONTZ acted as both a buyer and a seller in connection with fraudulent real estate transactions in concert with defendants PAUL BERGRIN, YOLANDA

JAUREGUI, a/k/a "Yolanda Bracero," and co-conspirator D.D.

### The Conspiracy

2.    From on or about May 19, 2005 through on or about
April 6, 2006, in the District of New Jersey and elsewhere,
defendants

PAUL BERGRIN
YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," and
SUNDIATA KOONTZ

did knowingly and intentionally conspire and agree with each
other and others to execute a scheme and artifice to defraud
lending institutions, and to obtain approximately $1,107,000 from
these lending institutions, by means of materially false and
fraudulent pretenses, representations, and promises, and to use
interstate and foreign wire communications for the purpose of
executing such scheme and artifice, contrary to Title 18, United
States Code, Section 1343.

### Object of the Conspiracy

3.    It was the object of the conspiracy for defendants
PAUL BERGRIN, YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," SUNDIATA
KOONTZ and others, to obtain money by fraudulently inducing
lending institutions to approve mortgage loans.

### Manner and Means of the Conspiracy

4.    It was part of the conspiracy that defendants PAUL
BERGRIN and YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," sought
co-conspirator D.D.'s assistance in acquiring buyers who would
purchase real estate properties owned by defendants PAUL BERGRIN

and YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," at inflated prices in connection with fraudulent real estate transactions.

5.   It was further part of the conspiracy that co-conspirator D.D. would recruit other co-conspirators, including defendant SUNDIATA KOONTZ, to purchase properties, including properties owned by defendants PAUL BERGRIN and YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," or companies they owned, at inflated prices.

6.   It was further part of the conspiracy that the co-conspirator buyers, including defendant SUNDIATA KOONTZ, would apply for and obtain mortgage loans to purchase real estate properties by submitting false information and documents to lending institutions, including false representations about down payments on the properties which were in fact not made, and false earnings information.

7.   It was further part of the conspiracy that co-conspirator D.D. would assist the co-conspirator buyers, including defendant SUNDIATA KOONTZ, with submitting documents and information to lending institutions that: (a) falsely inflated the value and purchase price of the properties; and (b) falsely portrayed the co-conspirator buyer's credit-worthiness.

8.   It was further part of the conspiracy that the conspirators would fraudulently cause the lending institutions to approve the co-conspirator buyers' mortgage loan applications and disburse funds to the conspirators' or their settlement agents.

37

9.   It was further part of the conspiracy that the conspirators would share the proceeds of the fraudulently obtained mortgage loans.

10.   It was further part of the conspiracy that, in connection with the fraudulent real estate transactions, co-conspirators, including defendant PAUL BERGRIN, acted as the closing attorney for co-conspirator buyers and sellers.

11.   It was further part of the conspiracy that, in connection with some fraudulent real estate transactions, defendant SUNDIATA KOONTZ acted as the seller.

12.   It was further part of the conspiracy that the defendants and their co-conspirators would use interstate wire transactions, including the electronic transfers of mortgage funds, to facilitate the fraudulent real estate transactions.

13.   It was further part of the conspiracy that substantially all of the mortgage loans obtained pursuant to the scheme described herein resulted in default.

**Wire Transfers**

14.   To effect the object of the conspiracy, defendants PAUL BERGRIN, YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," SUNDIATA KOONTZ, and others used interstate and foreign wire communications, including the following:

a.   On or about September 27, 2005, defendant SUNDIATA KOONTZ caused a representative of Atlantic Home Loans to wire transfer approximately $101,500 from the Atlantic Home Loans account in New Jersey to an account at a bank in Pennsylvania, which was controlled by L. & C. Search and Abstract, who disbursed those funds via check to SUNDIATA KOONTZ and other participants in the conspiracy.

b.   On or about October 25, 2005, defendant SUNDIATA KOONTZ caused a representative of J.P. Morgan Chase Bank to wire transfer approximately $170,000 from the J.P. Morgan Chase Bank account located in New York to a Chase account controlled by KOONTZ and D.D. in New Jersey.

c.   On or about July 21, 2005, defendant SUNDIATA KOONTZ caused a representative of America's Wholesale Lender to wire transfer approximately $237,500 from America's Wholesale Lender's account in Florida to an account at a bank in Pennsylvania controlled by L. & C. Search and Abstract for ultimate disbursal to defendant YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," and other participants in the conspiracy.

d.   On or about March 7, 2006, a co-conspirator

39

caused a representative of Bear Stearns Residential Mortgage Corporation to wire transfer approximately $313,500 from the Bear Sterns Residential Mortgage Corporation account located in Pennsylvania to an account controlled by M. S. Title Agency in New Jersey, for ultimate disbursal to defendant SUNDIATA KOONTZ and other participants in the conspiracy.

        e.  On or about March 28, 2006, a co-conspirator caused a representative of Bear Stearns Residential Mortgage Corporation to wire transfer approximately $285,000 from the Bear Sterns Residential Mortgage Corporation account located in Arizona to an account controlled by A. T. & S. Services in New Jersey, for ultimate disbursal to defendant SUNDIATA KOONTZ and other participants in the conspiracy.

        All in violation of Title 18, United States Code, Section 1349.

## COUNTS TEN THROUGH FOURTEEN
(Wire Fraud)
(Defendants Bergrin, Jauregui, Koontz)

1.    Paragraphs one and four through fourteen of Count Nine of this Indictment are hereby realleged and reincorporated as though set forth in full herein.

2.    On or about the dates set forth below, in Essex County, in the District of New Jersey, and elsewhere, the defendants

PAUL BERGRIN,
YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," and
SUNDIATA KOONTZ,

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is set forth in Count Nine, and for the purpose of executing and attempting to execute such scheme and artifice did transmit and cause to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, a writing, sign, signal, picture, and sound, namely the wire money transfers from the lending institutions and in the amounts set forth below, each representing a separate count of this Indictment:

41

| COUNT | DEFENDANT | DATE | FROM | TO | PROPERTY | AMOUNT |
|-------|-----------|------|------|-----|----------|--------|
| TEN | PAUL BERGRIN, and SUNDIATA KOONTZ | 9/27/05 | Atlantic Home Loans, (NJ) | L. & C Search and Abstract, (PA) | 46 Eaton Place, East Orange, New Jersey | $101,500 |
| ELEVEN | PAUL BERGRIN, and SUNDIATA KOONTZ | 10/25/05 | J.P. Morgan Chase Bank, (NY) | Chase Bank (NJ) | 46 Eaton Place, East Orange, New Jersey | $170,000 |
| TWELVE | PAUL BERGRIN, YOLANDA JAUREGUI, a/k/a "Yolanda Bracero," and SUNDIATA KOONTZ | 7/21/05 | America's Wholesale Lender, (FL) | L. & C. Search and Abstract, (PA) | 13 Edgerton Place, South Orange, New Jersey | $237,500 |
| THIRTEEN | PAUL BERGRIN, and SUNDIATA KOONTZ | 3/7/06 | Bear Stearns, (PA) | M. S. Title Agency, (NJ) | 484 South 20th Street, Newark, New Jersey | $313,500 |
| FOURTEEN | PAUL BERGRIN, and SUNDIATA KOONTZ | 3/28/06 | Bear Stearns, (AZ) | A. T. & S. Services, (NJ) | 266 Wainwright Street, Newark, New Jersey | $285,000 |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

A TRUE BILL


RALPH J. MARRA, JR.
Acting United States Attorney

CASE NUMBER: 09-369 (WJM)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

PAUL BERGRIN,

YOLANDA JAUREGUI, a/k/a "Yolanda Bracero,"

THOMAS MORAN,

VICENTE ESTEVES, a/k/a "Vinny"

and SUNDIATA KOONTZ

# INDICTMENT FOR

18 U.S.C. §§ 1962, 1512, 1952, 1349, 1343, 371 and 2

RALPH J. MARRA, JR.

*ACTING U.S. ATTORNEY*

*NEWARK, NEW JERSEY*

JOHN GAY, JOSEPH N. MINISH

*ASSISTANT U.S. ATTORNEYS*

*(973) 297-2018*

*(973) 297-2012*

USA-48AD 8
(Ed. 1/97)