**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**UNITED STATES OF AMERICA,**

**v.**

**PAUL W. BERGRIN,** *et al.*

**Defendants.**

Criminal No. 09-369

**OPINION**

This matter comes before the Court on Defendant Paul Bergrin's Second Omnibus Motion. As discussed in more detail below, the Court grants the motion in part, denies it in part, and reserves on the remainder.

## I.  Background

Because this Court writes this Opinion for the benefit of the parties only, it need not and will not describe the factual and procedural background of this case at much length. On June 2, 2011, the Grand Jury in and for the District of New Jersey charged Bergrin, an attorney, in the Thirty-Three-Count Second Superseding Indictment (the "SSI") with racketeering, in violation of 18 U.S.C. § 1962(c), racketeering conspiracy, in violation of 21 U.S.C. § 846, and various other federal offenses, including tax evasion, running a prostitution business, drug crimes, witness tampering, and conspiracy to murder a federal witness (the "K.D.M. Murder"). Bergrin moves pretrial for various form of relief, which the Court will now address issue-by-issue.[1]

## II.  Legal Analysis

### A.  Dismissal of Count Twenty-Six of the SSI

Bergrin moves to dismiss Count Twenty-Six under Federal Rule of Criminal Procedure 12(b)(3)(B). In analyzing a motion to dismiss under Rule 12, the Court must accept as true the facts as alleged and determine if those facts constitute a

---

[1] Bergrin has also moved for severance under Federal Rule of Criminal Procedure 14. The Court will address that motion in a separate opinion.

violation of the law under which the defendant is charged. *United States v. Zauber*, 857 F.2d 137, 144 (3d Cir. 1988). In assessing an indictment's sufficiency, the Court looks to whether the charging document: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007).

Count Twenty-Six charges Bergrin with causing or attempting to cause a nonfinancial business – in this case, his law firm – to fail to file certain tax reports with the intent of evading the reporting requirements. After charging the relevant facts, the SSI indicates the specific statutes Bergrin allegedly violated as "Title 31, United States Code, Section 5324(b) and Title 18, United States Code, Section 2." 31 U.S.C. § 5324(b) is the substantive criminal statute; 18 U.S.C. § 2 creates aiding and abetting liability.

Bergrin does not dispute that the SSI sufficiently alleges the substantive crime. He instead argues that because Count Twenty-Six charges him with violating Section 5324(b) "and" Section 2, and the factual allegations supporting the charge name no other actors or defendants, the Count necessarily charges Bergrin only with aiding and abetting himself in committing a crime. Bergrin further argues that not only is this an impossible act, it is not supported by the factual allegations of the Count, which do not contain a necessary element of aiding and abetting liability – namely, that another individual acted as the principal in committing the crime. *See United States v. Mercado*, 610 F.3d 841, 846 (3d Cir. 2010) (discussing elements of aiding and abetting including first element: "that another committed a substantive offense").

But aiding and abetting is an alternative theory of liability and is distinct from the charging of specific statutory crimes. *See, e.g.*, *United States v. Sutcliffe*, 505 F.3d 944, 959-60 (9th Cir. 2007). The fact that Count Twenty-Six also charges a violation of Section 2 does not bear on whether the Count sufficiently alleges a substantive criminal violation but merely serves to advise the accused that a conviction may be had even if the evidence tends to show that the accused was not the principle actor. *See United States v. Caruso*, 948 F. Supp. 382, 394-95 (D.N.J. 1996). Nor does the absence of specific facts in the Count explicating aiding and abetting liability necessarily prevent the Government from obtaining a conviction under that alternate theory. *See United States v. Somers*, 950 F.2d 1279, 1283 (7th Cir. 1991). In fact, if the SSI did not explicitly include aiding and abetting liability, this Court might still be required to read the alternative theory of liability into each and every count. *See United States v. Forsythe*, 560 F. 2d 1127, 1136 n. 15 (3d Cir. 1977) ("Nor is it dispositive of the substantive charge, since the indictment need

not specifically charge aiding and abetting in order to support a conviction for aiding and abetting. The indictment must be read as if 18 U.S.C. § 2 were embodied in each count.").

For the foregoing reasons, the Court will deny Bergrin's motion to dismiss Count Twenty-Six.

## B. <u>Alleged Violations of *Massiah v. United States*</u>

Bergrin asks this Court to suppress certain statements that Bergrin made to government agents regarding the K.D.M. Murder, as well as any information derived from these statements, under *Massiah v. United States*, 377 U.S. 201 (1964). In *Massiah*, the Supreme Court held that the deliberate elicitation of incriminating statements by a government agent outside the presence of a charged defendant's attorney violates the defendant's Sixth Amendment rights. In order to show a violation under *Massiah*, the defendant must prove that: (1) the right to counsel attached; (2) an informant was acting as government agent; and (3) the informant engaged in deliberate elicitation of incriminating information. *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999).

The key issues here is the timing of the attachment of Bergrin's right to counsel. The right to counsel does not attach until: (1) there is a formal charge, preliminary hearing, indictment, information, or arraignment; or (2) the accused is confronted by the procedural system or his expert adversary, or both, in a situation that might settle the accused's fate and reduce the trial to a mere formality. *Matteo*, 171 F.3d at 892. Bergrin was first indicted on May 19, 2009. The statements at issue were all made over a period of time between April 2008 and March 2009 – before Bergrin was indicted.

But Bergrin alleges that his right to counsel attached in 2007 because of several events. First, the state of New York indicted Bergrin on state law prostitution charges on January 10, 2007. Second, Bergrin hired an attorney around this same time to represent him in the New York case and the scope of this representation allegedly included dealing with possible future federal charges. Third, in April 2007, during a separate federal criminal trial against another defendant involved in the K.D.M. Murder, witnesses for the Government testified that Bergrin was part of a conspiracy to commit the murder. Fourth, on May 1, 2007, then-United States Attorney for the District of New Jersey, Christopher Christie, issued a press release describing the federal criminal trial and mentioning the testimony regarding Bergrin's role in the murders. Bergrin argues that because of these facts, his right to counsel attached at the earliest in January 10, 2007, and in any event, no later than May 2007.

Despite Bergrin's creative attempts, *Matteo* and *Massiah* simply do not stretch wide enough to cover his particular situation prior to his formal indictment. First, the right to counsel is offense specific, and provides no protection from elicitation of statements about uncharged conduct. *Texas v. Cobb*, 532 U.S. 162, 175 (2001). Thus, Bergrin's Sixth Amendment right to counsel that attached in connection with the New York state case is limited to statements regarding those charges and does not extend to statements regarding the K.D.M. Murder for which he was not yet charged. Second, the fact that Bergrin obtained counsel to represent him in possible future criminal charges does not mean that his right to counsel under *Massiah* attached; it is the conduct of the Government, not the suspect, that drives the determination. If it were otherwise, an individual could commit a crime and then immediately insulate himself from undercover investigation by merely signing a retainer agreement regardless of whether law enforcement had begun any formal proceedings or was even aware of the crime. Finally, the right to counsel does not attach merely because an individual is the object of an investigation – public or otherwise – where the individual has not been charged. *United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010); *see also Kirby v. Illinois*, 406 U.S. 682, 690 (1972) (refusing to find Sixth Amendment right to counsel attached during course of pre-indictment criminal investigation). Thus, the fact that United States Attorney Christie and persons in his employ made statements alleging Bergrin's possible involvement in the K.D.M. Murder is insufficient to trigger his Sixth Amendment rights.

And for those reasons, the Court will deny Bergrin's motion to suppress these statements.

## C. <u>Alleged Fourth Amendment Violations</u>

Bergrin alleges various violations of his Fourth Amendment rights, separated into three specific events, and seeks suppression of certain seized evidence under each. As discussed below, the Court finds no violations occurred, and so it will deny the coordinate motions to suppress.

i. Alleged Overbroad Execution of Search Warrant at 50 Park Place, 10th Floor, Newark, New Jersey ("50 Park Place")

Bergrin argues that the Court should suppress all evidence seized from 50 Park Place because the agents who conducted the search flagrantly disregarded the terms of the search warrant. *See United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1107 (3d Cir. 1989). Bergrin is incorrect.

Execution of a warrant must rise to the level of abuse to constitute flagrant disregard justifying suppression of all materials seized; where the officers appear to have acted in good faith, such abuse is not present even though the officers seized material well outside the scope of the warrant. *Id.* While Bergrin presents a brief list he claims is indicative of the kinds of materials seized that fall outside the scope of the warrant, perusal of the list does not suggest that the execution of the warrant was so overbroad that the agents were acting with flagrant disregard. Indeed, the search warrant itself was very broad, and an agent could reasonably and in good faith have believed that many of the items on Bergrin's list were well within the scope of the warrant.

Similarly, the fact that agents seized computer material for off-site search is not evidence of a Fourth Amendment violation. In collecting computers or hard drives, the Government does not need to conduct on-site data collection and may move the computer hardware off-site to conduct searches for relevant evidence. *United States v. Stabile*, 633 F.3d 219, 233-34 (3d Cir. 2011). And while it is true that the off-site search of computer material must be conducted within the scope of the warrant, *see id.* at 238-39, Bergrin has not presented evidence that might suggest that the Government failed to conduct focused searching in accordance with the warrant.

Of course this Court may still suppress materials seized that fall outside the scope of the warrant provided Bergrin properly objects to their introduction, but Bergrin has failed to justify a blanket suppression of all evidence seized from 50 Park Place.

## ii. Alleged *Franks* Violation

Bergrin alleges that a warrant obtained by the Government to search various physical locations was obtained in violation of *Franks v. Delaware*, 438 U.S. 154 (1978) and seeks a hearing on the issue and, ultimately, suppression of the evidence seized from those locations.

Under *Franks*, a court must suppress the fruits of a search obtained through the execution of a search warrant supported by misleading affidavits. *Id.* at 155-56. In order to secure suppression, a defendants must prove by a preponderance of the evidence that: (1) the affiant made a knowingly or recklessly included a false statement in the affidavit or omitted information from the affidavit; and (2) that without the omission or false statement, the affidavit would fail to establish probable cause, that is, that the omission or statement was material. *United States v. Frost*, 999 F.2d 737, 742-43 (3d Cir. 1993). In order to be entitled to a *Franks*

hearing, a defendant must make a "substantial preliminary showing" on both prongs. *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993).

Bergrin fails to make the necessary showing. Bergrin argues that the affidavit of FBI Special Agent Timothy B. Sillings was improper because it relied on information provided by Anthony Young but failed to provide information that would have allowed the magistrate judge to adequately determine Young's credibility. Specifically, the affidavit fails to mention that Young gave three conflicting versions of the information, only one of which appears in the affidavit. But even assuming the truth of this assertion – and assuming Bergrin can satisfy the first prong, which he does not appear able to – the alleged omissions are far from material. The Court has reviewed the affidavit as if it included the alleged omissions from Young's testimony and is satisfied that adequate probable cause still existed to support the search warrants at issue. *See Frost*, 999 F.2d at 743 (analyzing materiality of alleged omission and holding that "where an omission, rather than a misrepresentation, is the basis for the challenge to the affidavit, a court should ask whether the affidavit would have provided probable cause if it had contained a disclosure of the omitted information.") The affidavit is seventy-one pages long – with Young's statements providing only a small portion thereof – and it includes information more than adequate to show probable cause that specific evidence of the alleged criminal activity would be found at all of the locations ultimately searched.

> iii. Alleged Illegal Search of 710 Summer Avenue, Newark, New Jersey ("710 Summer Avenue")

Bergrin argues that agents conducted an illegal search of 710 Summer Avenue on May 21, 2009 when they entered the premises shortly after arresting a suspect just outside. While Bergrin concedes that agents later returned with a valid search warrant before actually seizing any evidence, Bergrin argues that the Court must suppress the evidence seized in that second search under the fruit of the poisonous tree doctrine. *See Wong v. United States*, 371 U.S. 471, 484-85 (1963). Again, Bergrin is mistaken.

The pertinent facts of the alleged illegal search are largely undisputed. Drug Enforcement Administration ("DEA") agents started surveillance of 710 Summer Avenue after receiving a tip from an informant around March of 2009. On May 21, 2009, after collecting large amounts of information from observation and the informant, the DEA agents arrested Alejandro Barraza-Castro outside in front of 710 Summer Avenue. At the time of his arrest, agents saw Jimenez, another individual who had been under surveillance, watching from the second floor of the

building. The agents, including one agent with his gun drawn, ordered Jimenez to grant them access to the building. Jimenez came down and opened the door, and the agents arrested him. At that same time, other agents entered the building and went to the second floor, where they found and arrested Alonso Barraza-Castro, another individual who had been under surveillance. They then conducted a protective sweep of the building, during which they observed that the building had a basement. After the sweep, they pulled out, leaving a few agents to secure the premises. Several hours later, they returned with a signed search warrant and searched the building. The warrant was based on evidence and information collected almost entirely independent of the sweep with the exception of information relating the existence of the basement. They found various pieces of evidence on the second floor and fifty-three kilograms of cocaine in the basement.

Officers have a right to conduct a protective sweep of a building where an arrest occurs – even if the arrest occurs outside the building – if the officer have a reasonable suspicion based on articulable facts that the area harbors individuals posing a danger to those on the arrest scene. *Maryland v. Buie*, 494 U.S. 325, 334 (1990); *Sharrar v. Felsing*, 128 F.3d 810, 823-24 (3d Cir. 1997). Bergrin argues that because of surveillance, the agents knew that there were only three individuals connected to the location, and thus, had no reason to search for other persons in a protective sweep once all three were arrested. But in doing so, Bergrin makes an assumption for which he lacks factual and legal support. Knowing that he was likely at the location and was possibly armed, the DEA agents certainly had a reasonable suspicion to enter to find Alonso on the second floor. And despite having conducted some surveillance on the building prior to the arrests, the agents lacked knowledge as to whether any additional individuals could be within the premises. Given that they were dealing with a drug distribution conspiracy that involved additional persons, and the fact that they had information from their investigation that firearms were on the premises, even after arresting all three targets, the agents could easily have had sufficient articulable facts to support a reasonable suspicion that other dangerous individuals were within the building.

Thus, the Court finds that the protective sweep was not illegal, and therefore suppression under the fruit of the poisonous tree doctrine is inappropriate.[2]

---

[2] Even if the Court were to find that the sweep was illegal, the warrant still would have been valid under the independent source doctrine. *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). That is, even if the tainted information from the affidavit were removed – the statement regarding the basement – the affidavit would still support the necessary probable cause determination. The Court does not reach the issue of whether the search was independently justified by exigent circumstances.

## D. <u>Preclusion of Privilege Material</u>

As part of its search of the seized materials, the Government obtained numerous documents from Bergrin's law offices and computer hard drives. The Government's Filter Team – an independent privilege review team walled off from the Government's trial attorneys – reviewed these documents to determine whether they were protected by the attorney-client or work product privileges. The Filter Team has turned over – or intends to turn over – certain documents they have reviewed to the trial attorneys. Bergrin challenges the propriety of turning over two of these documents, which the Court will refer to merely as the Loyal Communication and the Quijano Communication.[3] The Government concedes that both documents are privileged communications sent by Bergrin in furtherance of his representation of certain clients. But the Government argues that the communications are subject to the crime-fraud exception to privilege.

In order to invoke the crime-fraud exception, the Government has the burden of making a prima facie case that: (1) the client was committing or intending to commit a fraud or crime; and (2) the attorney-client communications were in furtherance of that fraud or crime. *In re Chevron Corp.*, --- F.3d ----, 2011 WL 2023257, at *12 (3d Cir. May 25, 2011). A prima facie showing requires presentation of evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met. *Id.* While the attorney-client privilege normally can only be waived by the client, the crime-fraud exception applies in a case against the attorney or his law firm where the attorney is acting unilaterally in committing crimes to further his representation of his client. *See In re Impounded Case (Law Firm)*, 879 F.2d 1211, 1213-14 (3d Cir. 1989).

The Government contends that both documents were communications made in furtherance of acts of witness tampering or attempted witness tampering that are not charged in the SSI. Both are communications from Bergrin to an investigator instructing the investigator to ask certain questions and to attempt to obtain certain statements from witnesses in then-pending cases against Bergrin's clients. The communications are not facially suspicious. Indeed, though the phrasing may be inelegant at times, the mere fact that Bergrin is hoping to obtain certain statements from witnesses is not indicative of criminal intent. And while the Government has proffered additional facts and evidence regarding the targeted witnesses and their

---

[3] The Filter Team has not turned over either of the two documents at issue, but intends to turn over both, if allowed to do so by this Court. The Government concedes that a third document formerly in dispute – the "Sobers Memorandum" – is privileged and has indicated it no longer intends to produce that document to the trial attorneys. Thus, the Court will deny Bergrin's motion as moot as it pertains to those particular documents.

testimony, they have not brought anything to the Court's attention to adequately show that the crime of witness tampering actually occurred or Bergrin's link thereto. *See Chevron*, 2011 WL 2023257, at *12.

For the foregoing reasons, the Court will grant Bergrin's motion on this point and order that the two documents be withheld from the Government's trial attorneys.[4]

## E. <u>Suppression of Expert Testimony</u>

The Government intends to elicit the expert testimony of Dr. Junaid Shaikh and Detective Luis Alarcon, a ballistics expert, regarding the cause of death and other evidence relating to the K.D.M. Murder. The Government has two reasons for introducing this evidence: (1) to prove the cause of death, a necessary element of a crime with which Bergrin is charged, and (2) to corroborate Young's story and thereby bolster his credibility as a witness. Bergrin wants the Court to exclude any expert testimony regarding the cause of death arguing that it is potentially prejudicial and irrelevant to the only disputed issue: whether Bergrin was actually involved in a conspiracy to commit the murder.

Despite this, the Court recognizes that the Government will likely have the right to introduce a limited amount of evidence regarding the cause of death in the K.D.M. Murder. This may include testimony from both experts. But the Court is not currently situated to make the determination of what particular evidence is necessary and appropriate. The Court will therefore reserve judgment on Bergrin's motion until later in the proceedings.

## F. <u>Immediate Production of Exculpatory Material</u>

The Government has offered to provide *Brady* and *Giglio* material three days prior to the appearance of the relevant witness; Bergrin moves for immediate production of all exculpatory material. This Court has discretion to determine when the Government should produce this material to Bergrin. *United States v. Starusko*, 729 F.2d 256 (3d Cir. 1984). Bergrin must receive the material early enough to make effective use of it at trial. *Id.* Given the potential complexity and amount of the material, and given that there are no countervailing security

---

[4] There are also issues around six additional documents Bergrin seeks to prevent the Filter Team from turning over to the trial attorneys. But the Government has represented that it has no intention of turning those documents over to the trial attorneys, and so this Court will deny Bergrin's motion regarding these documents as premature. Should the Filter Team later decide to turn these documents over to the trial attorneys, it should first notify Bergrin and this Court, and Bergrin will have the opportunity to renew his motion.

concerns that cannot be addressed otherwise, this Court will order the Government to produce the material two weeks prior to the beginning of trial. To the extent the Government feels that certain material or certain information regarding witnesses should not be turned over because of security concerns, the Government must make specific in-camera applications to this Court explaining the need for the withholding.

**III.** **Conclusion**

For the foregoing reasons, the Court will grant Bergrin's motion in part, deny it in part, and reserve on certain issues. An appropriate order follows.

_____
**WILLIAM J. MARTINI, U.S.D.J.**