UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**PAUL W. BERGRIN,**<br><br>Defendant. | Criminal No. 09-369<br><br>**OPINION** |

This matter comes before the Court on Defendant Paul Bergrin's motion for severance of offenses under Federal Rule of Criminal Procedure 14. As explained below, the Court finds that a joint trial of the remaining offenses in the Second Superseding Indictment (the "SSI") poses a serious risk of preventing the jury from making a reliable judgment as to Begrin's guilt or innocence with respect to certain counts which charge Bergrin with aiding and abetting the murder of a witness and conspiring to commit such murder in furtherance of a racketeering enterprise.

I. <u>Background</u>

On June 2, 2011, the Grand Jury in and for the District of New Jersey charged Bergrin, an attorney, with racketeering, in violation of 18 U.S.C. § 1962(c), racketeering conspiracy, in violation of 21 U.S.C. § 846, violent crimes in aid of racketeering, in violation of 18 U.S.C. § 1959 (collectively, the "RICO Counts"), and various other federal offenses, including tax evasion, prostitution, drug crimes, witness tampering, and the aforementioned murder. The thirty-three-count SSI charges many of these other federal offenses both as predicate acts in furtherance of the RICO Counts and in parallel substantive counts. At the heart of the SSI are Count Two, which charges the existence of an ongoing racketeering enterprise running from November 2001 until May 21, 2009, and Count Five, which charges a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, allegedly existing from sometime in 2003 until May 21, 2009. As part of those conspiracies, the SSI charges that in late 2003 and early 2004, Bergrin and others conspired to murder – and successfully murdered – K.D.M., a witness against W.B., a member of a drug trafficking organization that was a customer of Bergrin's criminal organization. The SSI also charges these acts separately as Counts Twelve and Thirteen, which charge Bergrin with murdering a witness and

1

conspiracy to commit such murder, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512 (a)(3)(A), 1512(k) and 2 (the "K.D.M. Counts"). Also in furtherance of the conspiracies, the SSI charges that in 2008, Bergrin and others conspired to murder "Junior the Panamanian," a witness against V.E., one of Bergrin's clients. The SSI also charges the Junior murder conspiracy separately from the other conspiracies as Counts Twenty through Twenty-Five, alleged violations of 18 U.S.C. §§ 371, 1952(a)(2), and 2 (the "Junior Conspiracy Counts"). As part of his various pretrial motions, Bergrin moved for severance under Rule 14.

On September 19, 2011, the Court found that a joint trial of every offense in the SSI would risk preventing the jury from making a reliable judgment as to Begrin's guilt or innocence with respect to the K.D.M. Counts. *United States v. Bergrin*, No. 09-369, 2011 WL 4407433, at *1 (D.N.J. Sept. 21, 2011). The Court ordered the K.D.M. Counts be tried separately and first to avoid this serious risk, *id.* at *8, and the trial began with jury selection on October 11, 2011. Neither party appealed the severance. At the trial, the Court admitted, over Bergrin's objections, a substantial amount of other act evidence that the Government argued was probative of Bergrin's intent and motive with respect to the K.D.M. Counts. The Government attempted to introduce even more other act evidence – including unduly prejudicial evidence regarding the Junior murder conspiracy – that the Court, exercising its substantial discretion under Federal Rules of Evidence 403 and 404(b), ultimately decided not to admit. The jury deliberated for over five days but was unable to reach a verdict; after consulting with Bergrin and the Government, the Court declared a mistrial on November 23, 2011. Recognizing its obligation to keep the proceedings moving expeditiously – and realizing that Bergrin, already incarcerated for over two-and-a-half years, would continue to sit in prison awaiting trial – the Court immediately scheduled a new trial to begin on January 4, 2012,[1] and requested that any motions be filed forthwith.[2]

But on November 30, 2011, the Government appealed the Court's prior decision to exclude certain evidence under Rule 404(b) at the first trial to the Third Circuit Court of Appeals, apparently divesting this Court of jurisdiction over a retrial of the K.D.M. Counts.[3] And on December 1, 2011, the Government formally requested to proceed on the balance of the SSI, including all four RICO Counts.

---

[1] The Court has since changed the date of the new trial to January 5, 2012.
[2] Subsequent to the mistrial, the Government claimed that it did not appeal the Court's severance ruling because it believed it would be allowed to introduce additional other act evidence at the trial. It remains unclear whether the Government even has the right to appeal an order severing under Rule 14; at least one esteemed federal court is skeptical that it does. *See United States v. Bloom*, 149 F.3d 649, 657 (7th Cir. 1998).
[3] Also on November 30, 2011, Bergrin moved for acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court has reserved decision on the motion, although it is unclear how the pending appeal affects this Court's jurisdiction to decide it.

On December 12, 2011, Bergrin moved for further severance under Rule 14 arguing that the serious risk of undue prejudice remained in the Government's proposed second trial. While maintaining that he would prefer the Court stay proceedings pending the appeal and then conduct a retrial of the K.D.M. Counts, Bergrin argues that if the Court proceeds in the interim, it must order an additional severance of offenses to address the undue prejudice the Court recognized in its prior severance opinion.

## II. Legal Analysis

### A. The Rule 14 Standard

Federal Rule of Criminal Procedure 14 provides that even where joinder is proper under Rule 8, "[i]f the joinder of offenses . . . appears to prejudice a defendant or the Government, the court may order separate trials of counts . . . or provide any other relief that justice requires." *See also Zafiro v. United States*, 506 U.S. 534, 537-38 (1993). The proper "tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion," *Zafiro*, 506 U.S. at 538, and will not be disturbed on appeal, absent a showing that the district court abused its discretion. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005). But the mere appearance of prejudice is insufficient to justify severance. Trial courts should only grant severance in those cases where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment of guilt or innocence." *Zafiro*, 506 U.S. at 538; *United States v. Silveus*, 542 F.3d 993, 1005-06 (3d Cir. 2008). As this Court previously held, spillover prejudice – in certain circumstances – may pose such a risk. *See Bergrin*, 2011 WL 4407433, at *2. *See also United States v. Lore*, 430 F.3d 190, 204-05 (3d Cir. 2005) (discussing alleged risk of prejudicial spillover evidence); *United States v. Adams*, 759 F.2d 1099, 1112-13 (3d Cir. 1985) (discussing alleged risk of prejudicial spillover evidence); *United States v. Newmark*, No. 06-447-1, 2008 WL 2165093, at *4-5 (E.D. Pa. May 22, 2008) (same); *United States v. James*, No. 07-578, 2008 WL 370921, at *8 (D.N.J. Feb. 11, 2008) (same).

### B. The Risk of Prejudice and the Court's Prior Decision

The Court begins from its original premise that trying Bergrin for his alleged involvement in the K.D.M. murder conspiracy with extensive evidence from the Junior murder conspiracy – evidence that would not otherwise be admissible in a trial on the K.D.M. Counts alone – would be fundamentally unfair and improper.

3

The Court explained the basis for that premise in detail in its ruling on Bergrin's prior motion for severance:

> The most substantial risk of unacceptable prejudice – and the risk that most troubles the Court – is the risk that the jury will find Bergrin guilty of murdering and conspiring to murder K.D.M. in late 2003 and early 2004 based on evidence of Bergrin's involvement in the conspiracy to murder Junior the Panamanian in 2008. The disparity in the likely evidence the Government will offer for both conspiracies highlights the inherent dangers. The Government proffers that it will introduce evidence, including audio recordings, showing that in 2008 Bergrin had conversations with a confidential informant – dubbed by the Government as "the Hitman" – during which Bergrin explicitly discussed killing Junior the Panamanian and instructed the Hitman to make the murder look like a home invasion robbery. By contrast, the Government's proffered evidence regarding the K.D.M. murder is much more circumstantial. The Government intends to prove that Bergrin said the words "no Kemo, no case" to certain other persons and that by uttering these words Bergrin specifically intended to cause those individuals to murder K.D.M. to keep him from testifying. And although the Government has a variety of evidence specifically probative of the K.D.M. Counts it intends to introduce, the evidence will likely be nowhere near as overwhelming as the evidence relating to the Junior murder.
>
> Concerns about spillover prejudice are common in trials involving joinder of numerous offenses. But the chief tool trial courts use to mitigate this prejudice is the providing of limiting instructions. And for most cases, limiting instructions are sufficient. *See, e.g.*, *See United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (affirming denial of severance where district court gave limiting instructions to mitigate spillover evidence); *Lore*, 430 F.3d at 205 (same). Indeed, limiting instructions might be sufficient to mitigate the danger of prejudice being caused by spillover of evidence as between many of the substantive counts. For example, the Court may instruct the jury that it should not consider certain evidence relating to the prostitution counts for the purposes of determining Bergrin's guilt regarding the drug conspiracy counts. And because there is nothing specifically technical or confusing about these crimes, the Court has confidence that the jury would be able to follow such instructions. *See Lore*, 430 F.3d at 205.

> But in considering Bergrin's guilt for the K.D.M. Counts, any limiting instructions would likely be insufficient. It would be perhaps unavoidable – and merely human – for the jury to use the direct, explicit evidence from the Junior murder conspiracy case to infer Bergrin's guilt of the K.D.M. Counts regardless of any limiting instruction. That is, the Court recognizes that it cannot reasonably expect jurors to compartmentalize this evidence due to the similar nature of the charges and the disparity of the level of evidence as to each. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (holding that relevant inquiry is whether district court could reasonably expect jury to compartmentalize evidence). This potential prejudice is so severe that it presents a serious risk that joinder would prevent the jury from making a reliable judgment as to the K.D.M. Counts. And although he is charged with a variety of crimes, the stakes on the K.D.M. Counts are especially high for Bergrin: if a jury finds him guilty on those counts, he faces a mandatory life sentence.
>
> And while this threat of prejudice is alone sufficient to justify severance, the inclusion of the RICO Counts compounds the problem. While it makes no final determination, the Court recognizes that the jury would likely hear instructions requiring them to parse evidence of substantive criminal actions from evidence of predicate acts. Given the particular structure and factual allegations of the SSI, this task could be arduous even without the threat of spillover evidence as between the murder conspiracy counts. But the combination of all the counts, as charged in the SSI, greatly magnifies the risk of prejudicial spillover.
>
> This finding, barring other considerations, would compel the Court to sever the charged offenses in such a way as to prevent this prejudicial spillover of evidence from the Junior murder conspiracy to the K.D.M. murder conspiracy.

*Bergrin*, 2011 WL 4407433, at *2-3. Nothing that has occurred since that initial ruling has changed the Court's opinion as to the real and serious nature of this risk.[4]

While the most logical solution would be to retry the K.D.M. Counts, the Government's appeal has made that impossible at this point. Nor does the Government appear to want to retry the K.D.M. Counts at this time, as it has

---

[4] If anything, the experience of the first trial – which resulted in a hung jury – has affirmed for the Court its concerns. Having sat through the severed case and heard all the evidence, including the Rule 404(b) other act evidence that the Government introduced to bolster its limited direct evidence, this Court can only conclude that its prior decision to sever the K.D.M. Counts was correct.

5

indicated its desire to proceed with other charges in the interim. In light of these facts – and the fact that Bergrin is still in custody awaiting trial – the Court must consider how to proceed while remaining mindful of the fact that the first trial failed to produce a factual determination as to Bergrin's involvement in the K.D.M. murder conspiracy. It must find a solution that alleviates the risk of prejudice while being fair to both parties and maximizing the efficient use of judicial and party resources.

### C.  The Government's Proposal to Proceed with the Balance of the SSI

The Government's plan is not that solution. The Government's proposal to proceed to trial with Counts One through Eleven and Fourteen through Thirty-Three completely ignores this Court's prior findings regarding undue prejudice. Counts One, Two, and Three would each appear to put Bergrin in jeopardy for his alleged involvement in the K.D.M. murder conspiracy and would also entitle the Government to introduce evidence of the Junior murder conspiracy in support of the charge. That is, a trial on any of these Counts would result in the very undue prejudice that the original severance sought to avoid. Counts One and Two charge a racketeering enterprise that incorporates both the K.D.M. murder conspiracy and the Junior murder conspiracy as predicate acts. Thus, any trial on Counts One and Two that occurred prior to a verdict or factual finding on the K.D.M. Counts would necessarily involve evidence of both murder conspiracies. Similarly, a trial involving Count Three, which charges Bergrin for his involvement in the K.D.M. murder conspiracy as a violent crime in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and (2), would require proof of the racketeering enterprise charged in Counts One and Two and would put Bergrin in jeopardy for his alleged involvement in the K.D.M. murder conspiracy.

Because the Court has found that the risk of prejudice has not magically dissipated following the mistrial, the Court must reject the Government's proposed second trial for the very same reasons that led to its prior decision to sever out the K.D.M. Counts.

### D.  Bergrin's Proposed Severance of the Junior Conspiracy Counts

While the Government's proposal does nothing to address the Court's concerns regarding prejudice, Bergrin's proposed solution goes much too far. Bergrin would have this Court sever the Junior Conspiracy Counts, Counts Twenty through Twenty-Six, and order the Government to proceed to trial on those counts alone. But the Court rejected this exact same approach in its prior severance

6

opinion. *Bergrin*, 2011 WL 4407433, at *3 (characterizing Bergrin's proposal to sever SSI into six separate trials as "far beyond what is necessary under Rule 14."). And the Court must reject it again.

Bergrin argues that the risk of spillover prejudice between the K.D.M. Counts and the Junior Conspiracy Counts flows both ways. That is, Bergrin argues that any evidence of the K.D.M. murder conspiracy would unfairly prejudice Bergrin by preventing the jury from making a reliable determination of his guilt as to the Junior Conspiracy Counts. The Court disagrees.

First, despite Bergrin's arguments to the contrary, evidence regarding the K.D.M. murder conspiracy would likely be admissible in any trial of the Junior Conspiracy Counts, thereby making severance unwarranted. *See United States v. Eufrasio*, 935 F.2d 553, 571 (3d Cir. 1991). As previously mentioned, both murder conspiracies are charged as part of the racketeering enterprise and as part of Count Five, the drug conspiracy. In the normal course, the Government would be entitled to introduce evidence of both murder conspiracies at a trial of any of those counts. But even if the Court were to hold a separate trial just of the Junior Conspiracy Counts, evidence of the K.D.M. murder conspiracy would likely be admissible under Rule 404(b). Whereas the Court was skeptical – and correctly so – of the probative value of evidence of the Junior murder conspiracy for any proper purpose relating to proving the K.D.M. murder conspiracy, that skepticism rested primarily, if not completely, on the fact that the Junior murder conspiracy happened five years *after* the K.D.M. murder conspiracy:

> Imput[ing] knowledge or intent from subsequent acts requires a less defensible inferential leap. The fact finder must assume that because a person acted expecting or intending a certain consequence at a later date, he intended that same consequence to occur when he took that same act some time before, without an obvious mechanism of why that should be. Instead, it looks more like evidence that is being offered to show that the accused is a "bad guy," someone with the propensity to commit criminal acts. He did it in 2008, so he must have done it in 2004. But this is of course the exact purpose for which other act evidence under Rule 404(b) is impermissible. And this is in part why the Third Circuit has expressed its skepticism of the value of subsequent acts to prove intent and knowledge: "[t]he logic of showing prior intent or knowledge by proof of subsequent activity escapes us." *United States v. Boyd*, 595 F.2d 120, 126 (3d Cir. 1978).

*See Bergrin*, 2011 WL 4407433, at *5-6 (discussing subsequent crime evidence). Here, because the K.D.M. murder conspiracy occurred *before* the Junior murder conspiracy, that logic does not apply.

Second, Bergrin has failed to explain why limiting instructions would be insufficient to address any concerns of spillover evidence. In most cases, the Court can expect that jurors will follow instructions. *See Pabon v. Mahanoy*, 654 F.3d

7

385, 393-94 n.10 (3d Cir. 2011) (quoting *Richardson v. Marsh*, 481 U.S. 200 (1987)). But in a trial of the K.D.M. murder conspiracy, the introduction of the evidence surrounding the Junior murder conspiracy created a kind of perfect storm that this Court felt, based on its trial experience, posed a serious risk of undue prejudice justifying severance: the Junior murder conspiracy evidence would be inadmissible for any proper purpose at a separate trial of the K.D.M. Counts, the inclusion of the RICO counts and the corresponding instructions magnified the potential for confusion and failure to follow instructions, and the disparity in evidence created a great temptation for jurors to improperly consider evidence. This risk was of heightened seriousness because Bergrin could have been convicted for a crime that carried a mandatory life sentence based on evidence of a criminal act that carried a lesser, although still very substantial, penalty. That perfect storm does not exist here, and the Court is not in the habit of severing counts merely because certain evidence is bad for a defendant's case. *See Eufrasio*, 935 F.2d at 568.

Thus, while Bergrin's proposed severance would address the Court's concerns about prejudice – Bergrin would not be on trial for any involvement in the K.D.M. murder conspiracy – it is neither justified by concerns for prejudice nor fair to the Government. And so the Court will not order it.

### E.  Severance of the Drug Conspiracy Counts

Recognizing that trial on any count for which Bergrin faces criminal exposure for his alleged involvement with the K.D.M. murder conspiracy cannot proceed at this time, the Court finds that further severance is necessary. And in order to conserve judicial and party resources, and provide the Government with the ability to present as much of its case as possible while protecting Bergrin from undue prejudice, the Court finds that the best solution is for the Government to proceed with trial on Counts Five, Eight through Ten, and Seventeen through Twenty-Six (the "Drug Conspiracy Counts").

This would include all drug-related charges, the Junior Conspiracy Counts, and Counts Seventeen through Twenty, which relate to witness tampering acts involving A.W. With the exception of County Twenty-Six, each of these Counts is pled as part of the drug conspiracy under Count Five.[5] The trial would of course not contain the K.D.M. Counts, which remain severed and over which this Court lacks jurisdiction, but the Government would be entitled to introduce evidence

---

[5] Count Twenty-Six charges Bergrin with evading currency transaction reporting requirements in violation of 31 U.S.C. § 5324(b) and 18 U.S.C. § 2. While not pled as part of the Count Five conspiracy, joinder is proper under Federal Rule of Criminal Procedure 8(a) because it is connected to the Junior murder conspiracy scheme and is part of the same transaction as at least one of the acts charged in that scheme.

regarding the K.D.M. murder conspiracy as charged in Count Five. All of the RICO Counts would also be excluded, as would Counts Fourteen through Sixteen, relating to prostitution charges, and Counts Twenty-Seven through Thirty-Three, relating to tax evasion, because they are neither charged as part of Count Five nor sufficiently similar under Rule 8(a) for joinder to be proper.[6]

Severing the Drug Conspiracy Counts makes the most sense under these circumstances. Most importantly, it avoids undue prejudice because Bergrin faces no exposure for his alleged involvement in the K.D.M. murder conspiracy, and so the jury cannot find him guilty of those charges based on improper spillover evidence. It also incorporates as many of the remaining counts as may be properly joined, and, if Bergrin is convicted, carries a substantial penalty which should satisfy the Government's desire for justice. Finally, it has the possibility of an efficient use of resources because it will not require much repetition of evidence from the previous trial – or future retrial – of the K.D.M. Counts.[7]

### F.     **Order of Severed Trials**

In what the Court considers a thinly veiled attempt to either circumvent its prior decision or discourage the Court from taking further actions required by justice, the Government insists that it alone has the authority to determine the proper order of any severed trials and insists that if the Court orders further severance it will elect to proceed with a trial on the RICO Counts first. The Court disagrees. While the Government is certainly the master of its own prosecution because it has the ability to draft the indictment, *see, e.g.*, *United States v. Quintanilla*, 2 F.3d 1469, 1480 n.10 (7th Cir. 1993), a district court has an obligation and a corresponding power to provide the relief necessary to cure prejudicial joinder, as recognized by Rule 14.

Rule 14 provides that in order to alleviate potential undue prejudice this Court may sever counts and "provide any other relief that justice requires." This language – "any other relief justice requires" – is broad. In this case, justice requires not only severance but a determination of the order in which the severed counts may be tried. As the Supreme Court of the United States has recognized, "tailoring of the relief to be granted, if any, [is left] to the district court's sound discretion," *Zafiro*, 506 U.S. at 538. Inherent in the Court's authority to sever counts to avoid prejudice must be the power to determine the order in which those

---

[6] The Government has indicated it would not oppose severance of the tax counts, and has further agreed that it believes the prostitution charged could not be properly joined to the other charges absent the RICO Counts.

[7] Of course, the Government may mitigate this efficiency if it decides to introduce more evidence of the K.D.M. murder conspiracy than is necessary. But that call is for the Government to make – limited by law, of course – and this scheme presents the opportunity for minimal repetition.

counts are tried. To hold otherwise, especially in the rare and unusual circumstances presented by this case, would be to hold that the Court had no power to order effective relief under Rule 14. Indeed, if the Court ordered severance but did not also determine the order of the severed trials, the Government could proceed with the RICO Counts and seek to convict Bergrin of the K.D.M. murder conspiracy based on evidence regarding his involvement in the Junior murder conspiracy. The severance would accomplish nothing. The Court does not believe that such a result is the correct interpretation of Rule 14.

The Government's authority to the contrary is unpersuasive. The Government cites *United States v. Giannattasio*, 979 F.2d 98 (7th Cir. 1992), and *United States v. Schneider*, 594 F.3d 1219 (10th Cir. 2010), to support its argument that the Government – not the Court – decides what charges to bring and when to bring them. But neither *Giannattasio* nor *Schneider* involves a Rule 14 motion. In fact, *Giannattasio* expressly comments on the absence of a Rule 14 motion: "Of particular relevance here, a defendant can seek severance for trial of offenses charged in the indictment, if trying them together would prejudice his defense. Fed.R.Crim.P. 14. . . . Neither party moved for severance." *Id.* at 100. Instead, both *Giannattasio* and *Schneider* stand for the more general proposition that the Court may not sever counts and determine the order of trial where no motion for severance has been made and no concerns of undue prejudice are present. Considering that Bergrin has moved for severance and the Court has recognized a serious risk of undue prejudice, neither case has any bearing on what power the Court has to order the relief that justice requires under Rule 14.[8]

### III. Conclusion

For the foregoing reasons, the Court will grant Bergrin's motion for severance in part, deny it in part, and order the Government to proceed to trial on Counts Five, Eight through Ten, and Seventeen through Twenty-Six on January 5, 2012. An appropriate order follows.

                                                 s/ William J. Martini
                                                 **WILLIAM J. MARTINI, U.S.D.J.**

---

[8] And while there is limited direct authority regarding the power of a district court to determine the order in which severed trials proceed, the authority of which this Court is aware has assumed that district courts have such power. *See, e.g.*, *United States v. Cheely*, 814 F. Supp. 1430, 1438 (D. Alaska 1992) (determining ordered of severed trials and noting "I assume I have discretion to determine the order of trial when defendants are severed pursuant to Fed.R.Crim.P. 14."); *United States v. Brooks*, No. S1404CR0538JCHAGF, 2005 WL 2172359, at * 6 (E.D. Mo. Aug. 29, 2005) (recommending severance of counts and order in which counts should be tried).