# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| |  |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> v. <br><br> **PAUL W. BERGRIN,** <br><br> Defendant. | Criminal No. 09-369 <br><br> **OPINION** |

This matter comes before the Court on Defendant Paul Bergrin's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. For the reasons stated below, the Court will **DENY** the motion.

## I. Background

Because the Court writes only for the parties, the background facts here are limited. On June 2, 2011, the Grand Jury in and for the District of New Jersey charged Bergrin, an attorney, in a thirty-three count indictment. On September 19, 2011, the Court found that a joint trial of every offense in the indictment would risk preventing the jury from making a reliable judgment as to Begrin's guilt or innocence with respect to certain counts. ECF Nos. 236, 237; *see generally United States v. Bergrin*, No. 09-369, 2011 WL 4407433 (D.N.J. Sept. 21, 2011). The Court ordered that Counts Twelve and Thirteen – charging Bergrin with murdering a witness and conspiracy to commit such murder, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512 (a)(3)(A), 1512(k) and 2 – be tried separately and first to avoid this serious risk.

Both counts revolve around the same set of factual allegations. According to the indictment, William Baskerville was arrested around November 25, 2003 for distribution of crack cocaine. Baskerville was a member of a drug organization run by Hakeem Curry (the "Curry Organization"). On the day of the arrest, Bergrin appeared as defense counsel for Baskerville at an initial proceeding and received a copy of the criminal complaint against Baskerville and an affidavit made in support of his arrest. From this information, Baskerville was able to discern that a customer, Kemo Deshawn McCray, had cooperated against him as a confidential witness in connection with his arrest. On that same day, the indictment alleges that Bergrin spoke to Curry and relayed to him the name of the witness. Several days

1

later, on or around December 4, 2003, Bergrin met with Curry, Anthony Young, and other members of the Curry Organization. At that meeting, again, according to the indictment, Bergrin allegedly confirmed the identity of the witness and informed those present that if they did not kill McCray, Baskerville would spend the rest of his life behind bars. He also allegedly claimed that if they instead carried out the hit, then Bergrin would win Baskerville's case and Baskerville would go free. On March 2, 2004, Young, working in concert with other members of the Curry Organization, shot and killed McCray as he walked down the sidewalk. The indictment does not charge that Bergrin had any further contact with his alleged co-conspirators after the December 4th meeting and prior to McCray's murder on March 2, 2004.

The trial of Counts Twelve and Thirteen began with jury selection on October 11, 2011. At the close of the Government's case, Bergrin moved for a judgment of acquittal on both counts, pursuant to Rule 29(a). The Court reserved, as it is empowered to do under Rule 29(b). The jury deliberated for over five days but was unable to reach a verdict; after consulting with Bergrin and the Government, the Court declared a mistrial on November 23, 2011. Bergrin immediately renewed his motion for judgment of acquittal pursuant to Rule 29(c), and the Court reserved on the issue pending further briefing. Recognizing its obligation to keep the proceedings moving expeditiously – and realizing that Bergrin, already incarcerated for over two-and-a-half years, would continue to sit in prison awaiting trial – the Court also immediately scheduled a new trial to begin in January 2012.

Before briefing on the Rule 29 motion was completed, actions taken by the parties required the Court to shift its attention. On November 30, 2011, the Government appealed what it construed to be the Court's decision to exclude certain evidence under Rule 404(b) on a retrial of the Counts Twelve and Thirteen. Then, on December 1, 2011, the Government formally requested to try the balance of the indictment on January 4, 2012, rather than wait for an outcome on the pending appeal. Unsure of how the pending appeal affected the Court's jurisdiction to conduct a retrial, but recognizing the need to keep the case moving, the Court considered the request. On December 12, 2011, Bergrin moved for further severance under Federal Rule of Criminal Procedure 14, arguing that proceeding on the remainder of the indictment would result in substantial undue prejudice.[1] The Court heard oral argument on the issue at a status conference on December 14, 2011, and received further briefing from the parties thereafter. On December 27, 2011, the Court ordered further severance, finding that the exact threat of undue prejudice that compelled its original severance would remain if the Government

---

[1] Bergrin also made clear that he preferred to wait for an appellate decision and then to proceed with a retrial of Counts Twelve and Thirteen before proceeding on the remainder of the indictment.

proceeded on the balance of the indictment. ECF Nos. 359, 360; *see generally United States v. Bergrin*, 2011 WL 6779548 (D.N.J. Dec. 27, 2011). While the severance ordered was far less than what Bergrin requested, it was sufficient to address the Court's very specific concerns regarding prejudice. Immediately thereafter, the Government appealed the Court's December 27, 2011 order, alleging that it dismissed certain counts of the indictment, excluded evidence from the next trial, and unfairly compelled the Government to try some counts of the indictment in a particular order. In light of the second appeal, this Court stayed further trial indefinitely.

The issues regarding severance and any future trial no longer immediately before it, the Court now has the opportunity to address Bergrin's pending Rule 29 motion. While the Court earlier expressed its uncertainty about how the appeals may have affected its jurisdiction, *see Bergrin*, 2011 WL 6779548, at *2 n.3, the Court is now satisfied that it at least retains jurisdiction over the Rule 29 motion. The Court asked the parties if they would like further argument on the motion; both parties declined.[2]

## II.  Legal Analysis

### A.  The Rule 29 Standard

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Although the language requiring acquittal is mandatory, the bar to establish insufficiency of the evidence is high. The Court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010) (quotations omitted). The Court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting the court's judgment for that of the jury." *United States v. Tyson*, 653 F.3d 192, 199 (3d Cir. 2011) (quotations omitted). A finding of insufficiency should be reserved for those situations in which "the prosecution's failure is clear." *Id.* (quoting *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010)). The Court must consider the evidence as it existed when Bergrin first made the motion.

---

[2] Although it did not challenge the Court's jurisdiction to make a determination, the Government did respectfully suggest that the Court refrain from deciding the motion while the appeals were pending because the Government has requested that the case be reassigned to another judge. While the Court appreciates the Government's concern, it does not feel that the parties benefit in any way from delaying disposition of the motion; in fact, its obligations to the parties and the public compel the Court to proceed where it has jurisdiction.

Fed. R. Crim. P. 29(b); *United States v. Brodie*, 403 F.3d 123, 133-34 (3d Cir. 2005).

Bergrin argues that the evidence was insufficient in three specific respects. First, regarding Count Twelve, the conspiracy count, Bergrin argues that the evidence was insufficient to establish that he knowingly joined the conspiracy. Second, regarding Count Thirteen, the aiding and abetting count, Bergrin argues that the evidence was insufficient to establish that he knew that anyone was going to commit the murder. And third, also regarding Count Thirteen, Bergrin argues that the evidence was insufficient to establish that he actually aided or abetted the murder. The Court will address each argument below.[3]

### B. Sufficiency of the Evidence Regarding Count Twelve

Bergrin first argues that there is no evidence he joined the conspiracy during its existence. *See* ECF No. 327 at 32 (element of charged crime is that "during the existence or life of [the] unlawful agreement, defendant Paul bergrin knew the purpose of that agreement and intentionally joined in it."); *accord United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). He argues that the evidence indisputably shows that the murder conspiracy formed only after Bergrin left the December 4th meeting. In support of this theory, Bergrin notes that Young testified that the alleged co-conspirators only began discussing killing McCray after Bergrin left the meeting. Thus, Bergrin argues, all of his alleged actions predate the formation of the conspiracy. While this is an arguably plausible way in which to interpret the evidence presented at trial, it is not the only way that a rational trier of fact could fairly interpret it.

The Government presented evidence regarding Bergrin's involvement with the alleged conspiracy, that, if believed, would be sufficient to support a finding of guilt. First, the Government presented evidence that Bergrin's relationship with the Curry Organization predated the murder conspiracy. Both Abdul Williams and Young testified that Bergrin acted as defense counsel for members of the Curry Organization. And Ramon Jiminez testified that Bergrin introduced Curry to an individual who would supply Curry with drugs to distribute, thereby implicating Bergrin as having a direct role in the Curry Organization's illegal activities. Parts of this testimony also established that members of the drug organization had resorted to acts of violence in the past in protecting their drug business. Second, Young testified that Bergrin passed off the name of the confidential witness to Curry during a phone call on the day of Baskerville's arrest; a piece of evidence corroborated by Thomas Moran's testimony and Bergrin's statements to reporters.

---

[3] Because Bergrin has not objected to the evidence supporting the remainder of the elements of each count, the Court will assume that the evidence as to those elements was sufficient.

Third, Young testified that on December 4, 2003, Bergrin and Baskerville attended a bail hearing where they learned that Baskerville was exposed to a sentence ranging from ten years to life, with a guideline range of thirty years. Fourth, Young testified that on that same day, Bergrin met with him, Curry, and other members of Curry Organization, and that at that meeting, Bergrin told them how much time Baskerville faced. Young also testified that Bergrin encouraged the individuals assembled to not let the witness testify against Baskerville, and uttered the phrase "No Kemo, no case." Young further testified that he interpreted Bergrin to be encouraging them to kill McCray. Young also testified that after Bergrin left, the group began discussing in detail how to find and kill the witness. Finally, Young testified that the group specifically decided not to contact Bergrin after the murder was complete.

From all of this evidence, a rational trier of fact could have found proof beyond a reasonable doubt that Bergrin knowingly joined the conspiracy during its existence. Illegal agreements, such as those that constitute conspiracies, are rarely verbalized with precision, and the precise moment of formation is often subject only to circumstantial or indirect proofs. *See United States v.* McKee, 506 F.3d 225, 238 (3d Cir. 2007); *Brodie*, 403 F.3d at 134. A rational trier of fact may infer the necessary agreement from Bergrin's knowledge of the conspiracy and actions he took in furtherance thereof. *United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir. 1980). Here, a trier of fact could reasonably infer that the conspiracy began when Bergrin and Baskerville first met and discussed the identity of the witness on November 25th, and that the other members of the Curry organization joined the conspiracy on December 4th in Bergrin's presence and as a result of his urging. That Bergrin did not discuss the details of the murder plot with Young and the others thereafter does not compel this Court to rule otherwise. The fact that the co-conspirators carried out the murder several months later without further communication from Bergrin could reasonably suggest that Bergrin and his co-conspirators formed an agreement during that meeting that was so clear that further communication was unnecessary. And the law does not require that every co-conspirator be involved in every stage of the conspiracy. *See United States v. Kates*, 508 F.2d 308, 310 (3d Cir. 1975); *see also United States v. Boscia*, 573 F.2d 827, 834 (3d Cir. 1978) (holding that "[a] conspirator need not know all the details of the enterprise"). In fact, evidence showing that Bergrin initiated the plan by relaying McCray's name might be a sufficient basis alone for finding knowing participation. *See United States v.Crawford*, 60 F. App'x 520, 533-34 (6th Cir. 2003).

And the Government presented additional evidence to buttress such a conclusion. First, Jimenez testified that he overheard a discussion between Bergrin and Curry that a rational juror could infer was regarding the murder plot and

5

during which Bergrin repeated the line "no Kemo, no case." Second, Alberto Castro testified that in December 2003, Bergrin solicited him to murder McCray, further suggesting his unity of purpose with the murder conspiracy. Third, Williams testified that in 2007, Bergrin expressed to him concern that he might be implicated by Baskerville in the murder. A rational trier of fact could interpret this as evidence of Bergrin's consciousness of guilt, and could properly construe it as supporting an inference that Bergrin was a knowing member of the conspiracy. *See United States v. Shorter*, 54 F.3d 1248, 1260 (7th Cir. 1995). And finally, the Government presented evidence that Bergrin had an additional motive to participate in the murder conspiracy because he was directly involved in the Curry Organization's illicit drug trafficking. A trier of fact could infer from this involvement that he was concerned that Baskerville, if convicted, would turn on him and the Curry Organization. And a juror may consider such motivation as circumstantial proof of Bergrin's guilt. *United States v. Cross*, 308 F.3d 308, 322-23 (3d Cir. 2008) (holding evidence of scheme was admissible to "provide circumstantial evidence of [the] defendant's guilt by explaining his motive in committing the alleged offense.").

Neither mere knowledge of a conspiracy nor mere presence at the scene is sufficient evidence from which a juror may infer membership in a conspiracy. *Untied States v. Tyson*, 653 F.3d 192, 210 (3d Cir. 2011) (holding defendant's mere presence at scene is insufficient evidence of membership in conspiracy); *Provenzano*, 620 F.2d at 999 (holding "mere knowledge" of conspiracy insufficient to show participation in conspiracy). But the evidence presented, if believed, goes far beyond either. And while Bergrin is correct that a trier of fact could draw inferences favorable to his defense from much of this evidence – for example, from Castro's testimony a trier of fact could infer that Bergrin was not a member of the charged conspiracy – Bergrin is wrong that these are the only inferences a trier of fact may reasonably and properly draw. And under the current procedural posture, as mentioned above, the Court must view all of the evidence in the light most favorable to the Government.

For these reasons, the Court finds that the Government presented sufficient evidence from which a rational trier of fact could find Bergrin guilty of conspiring to murder McCray beyond a reasonable doubt.

### C. <u>Sufficiency of the Evidence Regarding Count Thirteen</u>

Bergrin also argues that the Government presented no evidence from which a reasonable trier of fact could infer that he knew members of the Curry organization were going to commit the murder or that he was in some way aiding them in doing so. *See* ECF No. 327 at 40 (element of charged crime is that "Mr.

6

Bergrin knew that someone was committing or was going to [commit the] murder [of] Kemo Deshawn McCray to prevent him from testifying at an official proceeding."); *accord United States v. Nolan*, 718 F.2d 589, 592 (3d Cir. 1983) (quoting *Nye & Nissen v. United States*, 336 U.S. 613 (1949)). Finally, Bergrin argues that there was no evidence that his acts did, in fact, aid or assist the murder. *See* ECF No. 327 at 40 (element of charged crime is that "Mr. Bergrin's acts did, in some way, aid, assist, facilitate, or encourage someone in murdering Kemo Deshawn McCray."); *accord Nolan*, 718 F.2d at 592 (quoting *Nye & Nissen v. United States*, 336 U.S. 613 (1949)). Bergrin argues that the evidence at trial made clear that Young and the other members of the Curry organization had already decided to commit the murder once they learned of the witness's identity. Bergrin further argues that the members of the Curry organization independently knew of the witness's identity and of the severity of Baskerville's possible sentence. In sum, Bergrin argues that the murder was *fait accompli* and his participation did not contribute to the actual crime in any way. But again, Bergrin's argument is simply one plausible way a rational trier of fact could construct the evidence proposed at trial.

Contrary to Bergrin's assertions, the Government presented evidence suggesting that McCray's murder was far from *fait accompli* and further suggesting that Bergrin's acts actually aided the murder. First, Young testified that he understood Bergrin's passing of the name of the witness to Curry as a request from Baskerville that the murder be committed. Given the evidence presented regarding Bergrin's association and familiarity with the Curry organization, a rational trier of fact could infer that Bergrin knew that members of the organization would use the information to murder the witness. And second, Young testified that prior to the December 4th meeting, the conspirators had not yet reached a decision of whether to commit the murder because they were not yet sure of the kind of sentencing exposure Baskerville faced. It was only after Bergrin provided this additional information – and made statements which Young interpreted as encouraging the murder to happen – that Young and the other members of the Curry organization finally decided to commit the crime. This type of advice and encouragement would satisfy the fourth element of aiding and abetting liability. *See United States v. Barnett*, 667 F.2d 835, 841 (9th Cir. 1982) ("It is only necessary that the appellant counseled and advised the commission of the crime, and that the counsel and advice influenced the perpetration of the crime.") (quotation omitted); *see also United States v. Riggi*, 541 F.3d 94, 109 (2nd Cir. 2008) ("Commanding or procuring a criminal act is sufficient to impose criminal liability [as an accomplice]."). And because the evidence could lead to a reasonable inference that Bergrin encouraged the murder, it could also lead to a reasonable inference that Bergrin knew or intended that the murder would occur; it

7

would defy logic to hold that one who urges that an action be taken could also simultaneous claim that he did not intend that such action would occur.

For these reasons, the Court finds that the Government presented sufficient evidence from which a rational trier of fact could find Bergrin guilty of aiding and abetting the murder of McCray beyond a reasonable doubt.

## III. <u>Conclusion</u>

For the foregoing reasons, the Court will deny Bergrin's motion for judgment of acquittal. An appropriate order follows.

<u>    /s/ William J. Martini    </u>
**WILLIAM J. MARTINI, U.S.D.J.**